NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HAPPY PRODUCTS, INC,

    Plaintiff,

    v.

ONTEL PRODUCTS CORPORATION *et al.*,

    Defendants.

No. 24cv9819 (EP) (JRA)

**OPINION**

**PADIN, District Judge.**

Plaintiff Happy Products, Inc. ("Happy") brings federal claims for infringement of U.S. Patent No. 9,242,479 (the "'479 Patent") under 35 U.S.C. § 271(a) and § 271(b), for trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), false advertising under the Lanham Act, 15 U.S.C. § 1117, a state claim for unfair competition under N.J. Stat. Ann. § 56:4-1, and common law claims for unfair competition and tortious interference against Defendant Ontel Products Corporation ("Ontel").[1] D.E. 34 ("First Amended Complaint" or "FAC.").

Ontel moves to dismiss a subset of Happy's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain allegations in Happy's pleadings pursuant to Federal Rule of Civil Procedure 12(f). D.E. 40.[2] Happy opposes. D.E. 50 ("Opp'n"). Ontel replies. D.E. 52 ("Reply"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, this Court will **DENY** Ontel's Motion.

---

[1] Happy brings other claims against other defendants who have been dismissed from this action since Ontel filed its Motion. D.E. 71. Therefore, while Happy names various defendants in its First Amended Complaint and while those defendants initially joined in on Ontel's Motion, this Court addresses Happy's First Amended Complaint only as it relates to Ontel.

[2] Ontel filed its brief as D.E. 40-1 ("Motion" or "MTD") and its notice of motion at D.E. 40.

I.     BACKGROUND

   A.     Factual Background[3]

Sometime before 2013, Juliette Fasset and her husband Bruce Cannon designed and co-invented a pillow that provides different angles for standing a tablet or other media.  FAC ¶¶ 90, 93, 95.  The pillow, called "Flippy," is essentially a pillow that acts as a tablet stand, permitting viewers to rest the Flippy comfortably on their body while they view the tablet.  *Id.* ¶ 98.  The Flippy has three sides.  *Id.* ¶ 100.  Each side is made up of a back support and a ledge.  *Id.*  The ledges are rounded in a way meant to "evoke waves rolling onto a beach."  *Id.* ¶ 103.



*Id.* ¶ 102.  Juliette considers the rounded ledges to be a "a signature aesthetic feature of [her] design."  *Id.* ¶¶ 105, 111.  In 2018, Juliette founded Happy and began investing in sales of the Flippy pillow to consumers through various channels.  *Id.* ¶ 115.  Happy began selling Flippy

---

[3] The facts in this Section (and throughout this Opinion) are taken from the well-pleaded factual allegations in the First Amended Complaint, which the Court presumes to be true for purposes of resolving the Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

pillows through QVC, Amazon, Etsy, Grommet, and directly to consumers. *Id.* ¶¶ 116, 120. Happy sought and received a trademark embodying the rounded ledge design of its Flippy product.



*Id.* ¶ 112 (citing U.S. Trademark No. 7,437,967). Happy also sought and obtained patents covering aspects of the Flippy design. *Id.* ¶¶ 80-89 (citing U.S. Patent No. 9,642,454 and Reissued U.S. Patent No. 48,479).

Ontel, a competitor, ordered a Flippy pillow to its corporate address on October 1, 2018. *Id.* ¶ 127. Ontel ordered twenty-six more Flippy pillows to Ontel's corporate address and to an Ontel employee's personal address beginning November 15, 2018. *Id.* ¶¶ 154, 157. In 2019, Ontel began selling its own version of the Flippy pillow. *Id.* ¶ 168. In its advertisements, Ontel depicted the Flippy pillow rather than its own version of the pillow. *Id.* ¶ 174. Ontel's prices for its pillow are lower than Happy's for Flippy and Ontel's craftsmanship is inferior. *Id.* ¶¶ 184-85.

On March 9, 2019, Happy emailed Ontel to inform Ontel that it would need a license to sell versions of the Flippy pillow. *Id.* ¶ 159. Happy also corresponded with Ontel's in-house counsel regarding Ontel's need to obtain a license from Happy to sell its versions of Flippy pillows. *Id.* ¶ 160. Happy further filed a complaint with Amazon in June 2021 when Ontel began selling its own version of the Flippy pillow. *Id.* ¶ 162. Because Ontel failed to contest Happy's complaint

with Amazon, Amazon delisted Ontel's version of the Flippy. *Id.* Ontel, however, has continued to market and sell versions of the Flippy pillow through other platforms. *Id.* ¶ 165.

Happy has continued to pursue other opportunities to sell its Flippy pillow, including by reaching out to Bed Bath and Beyond and Ollie's. *Id.* ¶¶ 198, 244-45. Happy, however, has discovered that Ontel has already begun selling its version of the Flippy pillow at lower prices to other outlets, such as Walmart, Fred Meyer, Kroger, Walgreens, Target, Big Lots, Joann's, and Meijer. *Id.* ¶¶ 208-211, 223; *see also id.* ¶ 244-45 (retailer explaining that its "low-ball" offer to Happy for purchases of Flippy was still "double what [it] paid [Ontel]"). Happy reached out to some of these outlets that sold Ontel's pillows but these outlets declined to pull their products and instead directed Happy to take up its intellectual property dispute directly with Ontel. *See, e.g.*, *id.* ¶¶ 212-21. Some of Happy's sales have also been returned because customers have found Ontel's cheaper version through other retailers. *See, e.g.*, *id.* ¶¶ 230-32. Happy's sales have also deflated based on bad reviews of Ontel's version of Flippy. *Id.* ¶¶ 229-30.

B.     **Procedural History**

Happy filed its original complaint on October 15, 2024 against Boscov Department Store, LLC, BJ's Wholesale Club Inc., Unbeatablesale.com (collectively, the "Retailer Defendants"), Telebrands Corporation ("Telebrands"), and Ontel. D.E. 1. Pursuant to this Court's preferences, Ontel filed a pre-motion letter on December 4, 2024 representing that all Defendants intented to move to dismiss Happy's claims. D.E. 16. Because Happy did not file a timely responsive pre-motion letter by December 11, 2024, this Court directed Happy to do so by December 13, 2024. D.E. 20. Thereafter, Happy filed both its responsive pre-motion letter, D.E. 21, and a stipulation dismissing Defendant Telebrands from the case, D.E. 22. This Court dismissed Telebrands, D.E. 23, and held a pre-motion conference on January 29, 2025, D.E. 31. Pursuant to the parties'

4

agreement at the pre-motion conference, Happy filed its First Amended Complaint on February 28, 2025. D.E. 33.

Happy's First Amended Complaint brings ten counts against Defendants Boscov Department Store, LLC, BJ's Wholesale Club Inc., Unbeatablesale.com (collectively, the "Retailer Defendants"), and Ontel. Happy brings:

- Claims for direct infringement of the '479 Patent against Ontel (Count I) and against the Retailer Defendants (Count III);

- Claims for induced infringement of the '479 Patent against Ontel (Count II);

- Claims for trade dress infringement under the Lanham Act against all Defendants (Counts V, VI, and VII);

- Claims for unfair competition under N.J. Stat. Ann. § 56:4-1 against all Defendants (Count VIII);

- Claims for unfair competition under New Jersey common law against all Defendants (Count IX); and

- Claims for tortious interference with prospective economic advantage under New Jersey common law against Ontel (Count X).

*See generally* FAC.

Ontel moves to dismiss Counts IV, VIII, IX, and X. Mot. at 1. Ontel also moves to strike from Happy's First Amended Complaint allegations that discuss Telebrands. *Id.* However, since Ontel's filing of the Motion, the Retailer Defendants have been dismissed from this action and are now subject to suit in another related action. D.E. 71; *Happy Prods., Inc. v. Boscov's Dep't Store, LLC et al.*, No. 25-11995 ("DNJ Retailers Case"), D.E. 17. That case, like other cases that Happy

5

has filed in other districts against other retailers, has been stayed pending the resolution of Ontel's Motion in *this* case. *See* DNJ Retailers Case, D.E. 17 at 2-3.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits district courts to dismiss a case for failure to state a claim. In reviewing a motion to dismiss for failure to state a claim, the reviewing court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The claims must "plea[d] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A "formulaic recitation of the elements of a cause of action" will not suffice, nor will allegations that require speculation to infer a plaintiff's entitlement to relief. *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations themselves must show that a plaintiff is entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may consider only the complaint, the exhibits attached thereto, matters of public record, and undisputedly authentic documents upon which the plaintiff's claims rely. *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010).

### B.     Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)

Federal Rule of Civil Procedure 12(f) permits district courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." District courts exercise "considerable discretion" over motions to strike. *Modular Steel Sys., Inc. v.*

6

*Westfield Ins.*, No. 20-1186, 2021 WL 1060264, at *2 (M.D. Pa. Mar. 9, 2021) (quoting *Charleston v. Salon Secrets Day Spa, Inc.*, No. 08-5889, 2009 WL 1532050, at *2 (E.D. Pa. June 1, 2009)). "[M]otions to strike," however, "as a general rule, are disfavored." *Kaetz v. Wolfson*, No. 22-1456, 2022 WL 4115505, at *1 n.2 (3d Cir. Sept. 9, 2022) (quoting *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Proprietary Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981)); *see also Bello v. United Pan Am Fin. Corp.*, No. 19-9118, 2024 WL 2354449, at *2 (D.N.J. May 23, 2024) (collecting cases). "[U]nless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case," motions to strike should be denied. *River Road Dev. Corp. v. Carlson Corp., N.E.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). "Consequently, any doubt as to whether striking a pleading is appropriate 'should be resolved in favor of the pleading.'" *Bello*, 2024 WL 2354449, at *2 (quoting *U.S. v. Boston Sci. Neuromodulation Corp.*, No. 11-1210, 2011 WL 883202, at *3 (D.N.J. Mar. 10, 2011)).

## III.    ANALYSIS

### A.    Happy Adequately Pleads a Claim for Trade Dress Infringement

Trade dress refers to a product's design or packaging which serves to identify the product's source. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001). Trade dress protects distinctive choices "like size, shape, and color" that are responsible for "the overall look of a product." *PIM Brands, Inc. v. Haribo of Am., Inc.*, 81 F.4th 317, 321 (3d Cir. 2023) (quoting *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255 (3d Cir. 2021)). In a trade dress infringement action, a plaintiff must "articulat[e] the specific elements which comprise its distinct dress." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

7

By requiring plaintiffs to discretely identify which elements make up an alleged trade dress, district courts may be assured that plaintiffs do not seek trade dress protection "at an improper level of generality, i.e., . . . an unprotectable style, theme, or idea." *Id.* (quoting *Landscape Forms*, 113 F.3d at 381). Courts must then "scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection of visual elements of its business." *Id.* Once articulated, the plaintiff must allege facts sufficient to support the inference that:

> (1) the allegedly infringing design is nonfunctional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product.

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 303, 307-09 (3d Cir. 2007).

For the reasons discussed below, the Court finds that Happy has adequately pleaded a claim for trade dress infringement only as it relates to the rounded ledges of Flippy.

> 1. *Happy identifies only a "soft fabric cover" and "rounded ledges" as part of its trade dress*

To the extent that Happy alleges that features beyond its product's "soft fabric cover" and "rounded ledges" are entitled to trade dress protection, those pleadings fail. Happy discloses that its trade dress "includ[es] . . . its soft fabric cover and the rounded ledges" but provides no list in its Complaint articulating the other elements of its trade dress, if there are any. *See* Compl. ¶ 333, 335-36; *see also Fair Wind Sailing*, 764 F.3d at 806 ("[T]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list." (quoting 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (4th ed. 2014))). Happy also indicates that the "distinctive features of" the Flippy trade dress can be seen in ¶¶ 120-21 and 129 of the First Amended Complaint but those paragraphs state only that certain patent numbers were posted on the product and on the product's packaging. The Court is unable to discern what other paragraphs Happy may have meant to cite to. Unfortunately for Happy, there is no list or other

8

disclosure identifying the specific features that make up Flippy's trade dress beyond the "soft fabric cover" and "rounded ledges." *Fair Wind Sailing*, 764 F.3d at 809. Accordingly, Happy fails to identify the elements of its purported trade dress beyond the "soft fabric cover" and "rounded ledges."

### 2. A "soft fabric cover" is not entitled to trade dress protection

A "soft fabric cover" does not constitute trade dress. The "soft fabric" feature refers to a sensory aspect of the Flippy's pillow cover, not to "the overall look of [Happy's] product or business." *Id.* at 806. Moreover, not only is a soft fabric cover plainly functional, Happy fails to allege that it is not, or that it has acquired secondary meaning. *Azurous, Inc. v. Kennedy Int'l Inc.*, No. 23-4770, 2024 WL 3219663, at *10 (D.N.J. June 28, 2024) (finding "soft, velvety" texture functional at the motion to dismiss stage). The only trade dress feature remaining at issue is therefore Flippy's "rounded ledges."

### 3. Flippy's rounded ledges

The Flippy rounded ledges may constitute trade dress. Happy's First Amended Complaint indicates that the Flippy designers chose the shape to "evoke waves rolling onto a beach." FAC ¶ 103. Happy further explains that although functionality would remain the same, the Flippy would mimic the appearance of a ninja star or other weapon if the corners were not rounded. *Id.* ¶ 104; *see id.* ¶ 105 ("Juliette has always viewed these rounded ledges as a signature aesthetic feature of her design."). Happy's Flippy logo also incorporates the visual impression made by the Flippy's rounded ledges. *Id.* ¶ 112; *see also id.* ¶ 103.

9


*Id.* ¶ 103. The Court is therefore satisfied that Happy properly pleads that the rounded ledges refer to a potentially protectable visual element of Flippy.

Ontel, however, also alleges that the Court may dismiss Happy's trade dress allegations because the Flippy rounded ledges are functional. Mot. at 8-12. Ontel urges the Court to take judicial notice of the USPTO's rejection of Happy's trade dress claim on grounds that the rounded ledges possess functionality. Mot. at 11. Ontel is correct that the Court may dismiss a claim for trade infringement when a plaintiff fails to plausibly state that its trade dress is nonfunctional. *See, e.g.*, *Fair Wind Sailing*, 764 F.3d at 808-09 ("But even assuming that Fair Wind had adequately stated the overall design it seeks to protect, its alleged 'trade dress' is clearly functional, and therefore not protectable."); *Interlink Prods. Int'l, Inc. v. HDS Trading Corp., Inc.*, No. 15-1642, 2015 WL 12840378, at *4 (D.N.J. Oct. 14, 2015) (dismissing count for failure to plead non-functionality). Ontel, however, is wrong here. Happy pleads non-functionality.

"A feature is nonfunctional where it 'is unrelated to the consumer demand . . . and serves merely to identify the source of the product' or business." *Fair Wind Sailing*, 764 F.3d at 811 (quoting *Prufock Ltd., Inc. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986)). By contrast, a feature

is functional where it is "essential to the use or purpose of the article," "affects the cost or quality of the article," or if kept from competitors, would put them at a "significant non-reputation-related disadvantage." *TrafFix*, 532 U.S. at 33. As explained above, Happy alleges that functionality would remain the same if the ledges were not rounded and explains that Happy wanted a shape that mimicked waves rolling onto the beach. While the USPTO's purported rejection of Happy's trade dress claim may be relevant to the ultimate disposition of Happy's claims, functionality is a question of fact. *PIM Brands*, 81 F.4th at 320 (citing *Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 850 (3d Cir. 1984)). Ontel may very well be able to demonstrate functionality later in litigation, but at the pleading stage, Happy's allegations relating to the rounded ledges' functionality must be taken as true. *See Shire U.S. Inc. v. Barr Lab'ys, Inc.*, 329 F.3d 348, 355 (3d Cir. 2003). Happy's allegations are therefore distinguishable from the cases Ontel cites where the feature at issue is plainly functional. *See, e.g.*, *Azurous*, 2024 WL 3219663, at *10 (finding "soft, velvety" texture plainly functional); *Bath Auth., LLC v. Anzzi LLC*, No. 18-834, 2018 5112889, at *6 (D.N.J. Oct. 19, 2018) (finding glass panels, hinges, and handles plainly functional).

Nor does the Court find Ontel's citations to Happy's patents persuasive. Ontel points to passages in Happy's patents disclosing that the claimed pillows are "configured to be rotated [around] a central axis so that the body can rest on a horizontal support in any one of three positions . . . ." Mot. at 12 (citing D.E. 34 ¶ 87). Ontel does not demonstrate how a requirement that a pillow have three sides and be rotatable around a central axis means that the pillow must have rounded ledges that mimic waves. There is therefore no indication, at this stage of the litigation, that Happy seeks trade dress protection over features claimed by its patent.

11

The Court will accordingly **DENY** Ontel's Motion regarding Counts IV for trade dress infringement as Happy has adequately plead that trade dress infringement as it relates to Flippy's rounded ledges.

### B. Happy Adequately Pleads Unfair Competition Claims

Ontel's arguments that Happy's unfair competition claims (Counts VIII and X) should be dismissed depend on finding that Happy's trade dress infringement pleadings are inadequate. Mot. at 18. Because Happy's trade dress infringement claim survives, this Court will **DENY** Ontel's Motion regarding Counts VIII and IX.

### C. Happy Pleads Tortious Interference with Prospective Economic Benefit

Under New Jersey law, tortious interference with prospective economic benefit requires proving four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages. *DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 567 (2001) (citing *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996)). Although "the right protected is plaintiff's right to 'pursue business,'" *Printing Mart-Morriston v. Sharp Elecs. Corp.*, 116 N.J. 739, 752 (1989) (quoting *Louis Kamm, Inc. v. Flink*, 113 N.J. 582, 588 (1934)), merely alleging lost business will not suffice, *Advanced Oral Techs., L.L.C. v. Nutrex Rsch., Inc.*, No. 10-5303, 2011 WL 1080204, at *4 (D.N.J. Mar. 21, 2011). Nor is it enough for a plaintiff to complain of the claimed loss of unknown customers. *Id.* A plaintiff must, at a minimum, allege prospective contracts that were interfered with. *Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, No. 07-5945, 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008). "[A]t the pleading stage, a plaintiff may not rest a claim . . . on a mere hope that additional contracts or customers would have been forthcoming . . . The complaint must allege facts that . . . would give rise to a reasonable probability

12

that particular anticipated contracts would have been entered into." *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1459 (E.D. Pa. 1992).

Ontel challenges the sufficiency of Happy's pleadings with respect to prongs (1), (3), and (4) of the standard for showing tortious interference with prospective economic benefit. Mot. at 18. The Court disagrees with Ontel's arguments.

*First,* Happy adequately pleads a protected interest. Happy alleges that since selling Flippy on QVC and through other platforms, Happy had a protected interest in pursuing business from consumers, direct-consumer sellers, in-store retailers, and online retailers. FAC ¶ 385; *see also id.* ¶ 386 (alleging "an expectation of continued and increased sales to consumers both directly and via QVC, of opportunities to sell Flippy to in-store and online retailers, and of opportunities to develop relationships leafing to potentially profitably business arrangements such as investment and/or acquisition"). Protected interests include a plaintiff's right to "pursue business." *Printing Mart-Morriston*, 116 N.J. at 752 (quoting *Louis Kamm, Inc. v. Flink*, 113 N.J. 582, 586 (1934)). Because Happy pursued business by soliciting sales through QVC, through Amazon, by contacting other outlets, and by selling directly on its own website, FAC ¶¶ 120, 385-87, Happy alleges "an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers." *Novartis Pharms. Corp.*, 2008 WL 4911868, at *7; *see Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, No. 10-453, 2010 WL 5239238, at *4 (D.N.J. Dec. 16, 2010) (finding plaintiff adequately pleaded "that it was 'in pursuit of business' since it alleges that it actively markets and distributes its pregnancy tests" (quoting *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 748 (3d Cir. 1996))). Happy also alleges that Ontel siphons off purchasers from Happy by misleading purchasers into thinking it is selling Flippy by using images of Flippy to market its own version of the pillow. *See, e.g.*, FAC ¶¶ 265-66. No more is needed.

13

Happy has pleaded sufficient specificity and does not need to identify the pursuit of prospective customers with more granularity. *See Heartland Payment Sys., LLC v. Carr*, No. 18-9764, 2021 WL 302918, at *7 (D.N.J. Jan. 29, 2021) (collecting cases refuting a need to identify a "specific prospective customer or contract").

*Second*, Happy also adequately pleads a reasonable likelihood that Ontel's interference caused a loss of Happy's prospective gains. Happy alleges that because Ontel has (1) advertised itself as the innovator; (2) represented that it could provide retailers with all necessary rights for importation, distribution, and sale; (3) infringed the Flippy trade dress; (4) flouted Happy's patent rights; and (5) undercut Happy in price, Ontel influenced retailers and direct purchasers not to deal with Happy and not to buy Flippy pillows. FAC ¶¶ 389-93. Happy provides examples. Happy discloses that some of the Flippy pillows it has sold through Amazon have been returned because Ontel sells versions that are cheaper on other platforms. *See, e.g.*, *id.* ¶ 226. Happy also complains that customers have mistakenly conflated Ontel's product with Flippy and have accordingly left bad reviews for Flippy, discouraging future purchasers on the platforms where Happy sells. *See, e.g.*, *id.* ¶¶ 230-32. Happy further alleges that the retailer Ollie's declined to purchase or license Flippy pillows because Ontel was offering prices "way below" even half of what Flippy's price was. FAC ¶¶ 245-47. This too is enough at the pleading stage. *See Metro. Foods, Inc. v. Kelsh*, No. 11-3306, 2012 WL 956178, at *5 (D.N.J. Feb. 14, 2012) (finding causation in tortious interference claim sufficiently pleaded because plaintiff explained what conduct led to its loss in customers).

Finally, Happy's allegations regarding damages are adequate as well. At the pleading stage, a plaintiff need not specify actual damages. *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304, 2009 WL 904010, at *20-21 (D.N.J. Mar. 31, 2009). By alleging that Happy suffered injury and

14

explaining how, Happy has satisfied its pleading requirements. *Id.* Ontel's arguments that Happy must plead more therefore impose too high a bar.

Accordingly, the Court will **DENY** Ontel's Motion regarding Count X.

**D.    The Court Will Not Strike Happy's Allegations Regarding Telebrands**

Ontel argues this Court should strike various portions of Happy's Complaint that relate to Telebrands, a former defendant to this case and third-party who competes with both Happy and Ontel. Mot. at 22-23. Ontel further complains that Happy's pleadings relating to Telebrands are prejudicial because they seek to conflate Ontel with Telebrands. *Id.* at 23-24. The Court agrees that much of the content that Happy includes in its First Amended Complaint is of dubious relevance but nevertheless declines to strike the allegations at this stage of the litigation.

Happy maintains that Telebrands's actions and the liability that Telebrands has faced in unrelated lawsuits provide context for how competitors in the industry operate. Opp'n at 27-28. Happy also repeatedly points out that executive employees of both Telebrands and Ontel are related family members. The Court identifies a few examples below:

> Telebrands, a family-owned company founded and run by AJ Khubani—the brother of Ontel CEO Chuck Khubani—touts itself as the creator of the "As Seen on TV" brand and logo. As alleged in an infringement lawsuit filed against Telebrands by MyPillow, "the principal of Telebrands, AK Khubani, is known as the infamous 'Knock Off King' of the infomercial industry.

FAC ¶ 31.

> To fully understand how Ontel's knock-off product business has harmed Plaintiff and too many other similarly-situated innovators to name, the behavior of its fellow "As Seen On TV" company Telebrands, headed by the brother of Ontel's CEO and the uncle of its President, in the saga of Telebrands's repeated and systematic efforts to rip off that innovation.

*Id.* ¶ 61.

15

Without bringing any agency theory or any claims alleging that Ontel and Telebrands acted in concert, Happy argues there is "an actual affiliation" between Ontel and Telebrands because the CEO of Ontel and the President of Telebrands are brothers. Opp'n at 29. Yet, Telebrands and Ontel are different companies, a fact that Happy does not dispute. Mot. at 22; *see* Opp'n at 26-29. And many of the paragraphs about which Ontel complains discuss unrelated cases that Telebrands has faced, and which involve unrelated intellectual property rights. *See, e.g.*, FAC ¶¶ 61-79 (discussing a jury verdict for willful infringement that Telebrands faced in a different case over a different product); *id.* ¶¶ 124-57 (discussing Telebrands's alleged analysis of the Flippy and alleged decision not to copy it). Happy maintains that these paragraphs are pertinent because "the contrast with Telebrands's decision[-]making process (and the different result) bears on willfulness of Ontel's infringement of [Happy's] intellectual property." Opp'n at 28-29.

Happy's allegations seem to seek to imply that because Telebrands has faced liability in other cases, it must be unscrupulous in its infringement of others' intellectual property rights. *See, e.g.*, FAC ¶ 31 (characterizing Telebrands's President as the "Knock Off King"). And Happy further implies that because Telebrands is unscrupulous, not only is Ontel unscrupulous, but Ontel must be particularly unscrupulous because Ontel decided to mimic the Flippy and Telebrands did not.[4] Opp'n at 28-29 (characterizing Telebrands as having made the "prudent" "good decision to

---

[4] To the extent that Happy's allegations are prejudicial, the prejudice either inures to Telebrands or inures to Ontel because Happy claims that Ontel willfully infringed Happy's intellectual property. But Happy brings willful infringement claims against Ontel. Therefore, neither type of prejudice here appears to be unfair to *Ontel*. *See Spanish Sports Network, LLC v. Spanish Football Prods., LLC*, No. 20-77354, 2021 WL 2284260, at *5 (D.N.J. June 4, 2021) (denying motion to strike because "[t]he only way it could be said that [the complaint's allegations] cast a derogatory light on Defendants is by contending that they acted illegally, but that is the very basis of Plaintiff's claims").

16

decline to violate [Happy's] intellectual property" and arguing that this decision serves to contrast "Ontel's blatant disregard for [Happy's] invention and intellectual property").

Other courts have stricken impertinent material from the pleadings when the allegations are "of dubious relevance to the issues in this case" and when those allegations can potentially end up before a jury. *Mylan Pharms. Inc. v. Teva Pharms Indus. Ltd.*, No. 21-13087, 2025 WL 756793, at *44-45 (D.N.J. Feb. 27, 2025) (striking allegations regarding defendant's foreign conduct despite plaintiff's argument that the defendant's conduct abroad was relevant to its intent because those allegations "will not tend to prove or disprove the claims that will proceed in this case"). Here, there is no current indication that a jury may determine Ontel's intent to infringe based upon the actions of Telebrands. Therefore, although the Court has doubts that Telebrands's actions are relevant to Ontel's intent, it will not strike those allegations at this time. *Bello*, 2024 WL 2354449, at *2 (explaining that doubts about relevance should be resolved in favor of the pleadings when determining the propriety of a motion to strike).

Accordingly, the Court will **DENY** Ontel's Motion under Federal Rule of Civil Procedure 12(f).[5]

## IV. CONCLUSION

For the reasons described above, the Court will **DENY** Ontel's Motion. An appropriate Order accompanies this Opinion.

Dated: November 13, 2025

Evelyn Padin, U.S.D.J.

---

[5] Ontel may re-raise its concerns about the relevance of Telebrands if it appears that the allegations concerning Telebrands will end up being considered by a jury.

17