**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HAPPY PRODUCTS INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ONTEL PRODUCTS CORPORATION,**<br><br>**Defendant.** | **Court No. 2:24-cv-09819-JCG-JRA** |

# OPINION AND ORDER

[Providing claim construction for the patents in suit.]

Dated: October 26, 2026

Jordan B. Kaplan, Fox Rothschild, LLP, of Morristown, N.J.; Timothy Devlin and Lowell D. Jacobson, Devlin Law Firm LLC, Wilmington, DE; and Tamara D. Fraizer, Squire Patton Boggs (US) LLP, of Palo Alto, CA. Attorneys for Plaintiff Happy Products, Inc.

Katherine A. Escanlar, Saiber LLC, of Madison, N.J.; Michelle Mancino Marsh and Ariel S. Peikes, ArentFox Schiff LLP, of New York, N.Y.; Janine A. Carlan and Saukshyma Trichi, ArentFox Schiff LLP, of Washington, D.C.; and Julie A. Vernon, ArentFox Schiff LLP, of Chicago, IL. Attorneys for Defendant Ontel Products Corporation.

Choe-Groves, Judge: This matter is before the Court for claim construction of terms in U.S. Patent No. RE48,479 (the "'479 Patent" or "Asserted Patent"). See Revised Joint Claim Construction Prehearing Statement ("Rev. Joint Chart") (ECF No. 114); U.S. Patent No. RE48,479 ("'479 Patent") (ECF No. 110-2). The

Parties seek construction of the following terms and phrases: "solid interior," "a body," "a surface of an interior," "a central axis," "an edge angle," "edge angle of," "edge support angle is," "edge support width is," "an edge support width of," "viewing angle," "a . . . viewing angle of the . . . back support," "horizontal support," "an outer edge of a . . . edge support counterclockwise to the . . . back support," "support angle," and "virtual plane." Pl. Happy Products Inc.'s Opening Claim Construction Br. ("Pl.'s Opening Br.") (ECF No. 110); Def.'s Opening Claim Construction Br. ("Def.'s Opening Br.") (ECF No. 111). Upon consideration of the briefs and arguments of counsel, the Court construes the disputed claim terms as set forth below.

**BACKGROUND**

Happy Products, Inc. ("Plaintiff" or "Happy Products") filed suit against Defendant Ontel Products Corporation ("Defendant" or "Ontel") for infringement of the Asserted Patent. Am. Compl. Patent Infringement, Trade Dress Infringement, False Advertising, Unfair Competition, Tortious Interference ("Am. Compl.") (ECF No. 34). This Opinion concerns the first step of the two-step infringement analysis, the construction of claims asserted in the '479 Patent. The '479 Patent is a reissue of U.S. Patent No. 9,642,454 ("'454 Patent"). '479 Patent at [64]. The '479 Patent recites the same claims as the '454 Patent and recites 19 additional claims. Am. Compl. at ¶ 86. The '454 Patent was reissued as the '479

Patent by the United States Patent and Trademark Office ("USPTO") on March 23, 2021. '479 Patent at [45]. The '479 Patent is titled "Multiple Viewing Angle Media Support," and is directed toward an apparatus to support media such as electronic readers, tablet computers, magazines, and books for comfortable viewing. Id. at [54], 1:35–37.

The Parties filed opening and responsive claim construction briefs.[1] See Pl.'s Opening Br.; Def.'s Opening Br.; Pl. Happy Product Inc.'s Resp. Claim Construction Br. ("Pl.'s Resp. Br.") (ECF No. 120); Def.'s Resp. Markman Br. ("Def.'s Resp. Br.") (ECF No. 121); Def.'s Reply Markman Br. ("Def.'s Reply Br.") (ECF No. 131). The Court held a claim construction hearing on August 12, 2026, and the Parties did not call expert witnesses. See Minutes of Proceeding (ECF No. 181).

**CLAIM CONSTRUCTION STANDARD**

When the meaning of a patent claim's language is disputed, the Court must construe the claim as a matter of law. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman, 517 U.S. at 372. "The purpose of

---

[1] The Court permitted Defendant to file Defendant's Reply Brief, in response to Plaintiff's inclusion of previously undisclosed evidence in Plaintiff's Responsive Brief. Letter (Feb. 9, 2026) (ECF No. 126); Text Order (ECF No. 129).

claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting Markman, 52 F.3d at 976).

"The patent is a fully integrated written instrument." Markman, 52 F.3d at 978. For the purpose of claim construction, "[a] court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing Markman, 52 F.3d at 979). "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." Thorner v. Sony Comput. Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).

Limitations from dependent claims, the specification, and embodiments will not be read into the claims. "The doctrine of claim differentiation [ ] creates a presumption that [ ] dependent claim limitations are not included in the independent claim." GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1310 (Fed. Cir. 2014) (citation omitted). Limitations found in the specification are not imposed into the claims. Phillips, 415 F.3d at 1323–24. In the same vein, "[i]t is improper to read limitations from a preferred embodiment described in the

specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." GE Lighting Sols., LLC, 750 F.3d at 1309 (citation omitted) (discussing a figure as a "depicted embodiment").

## DISCUSSION

### I. Undisputed Terms

The Parties agree that the term "plane angle" means "the angle between the plane of a back support and a virtual plane." Rev. Joint Chart at 1. The Court accepts and adopts this construction. The Court observes that Defendant contends that multiple terms are indefinite and reserves the right to raise indefiniteness at a later stage in this case. Id.; Text Order (ECF No. 88) ("[T]he parties may defer [indefiniteness] and raise it later at summary judgment or at trial.").

### II. Disputed Terms

The Parties identify 15 claim terms or term sets from the Asserted Patents that are disputed. The Court examines the disputed claim terms and the Parties' proposed constructions in turn.

#### A. Solid and Body Terms

##### i. "solid interior"

For the term "solid interior," Plaintiff proposes the construction "an interior that is a contiguous piece of material (for example, foam) rather than a shredded or

particulate material (for example, pillow feathers)," and Defendant proposes "an interior that is one contiguous piece without any cavities or holes." Rev. Joint Chart, Ex. A (ECF No. 114-1) at 1. The Parties' constructions both include the phrase "contiguous piece," indicating that both agree that the "solid interior" is one part that connects to all other sides of the apparatus. The Parties disagree on whether the disputed term should be construed as a "contiguous piece" with or without cavities or holes. Pl.'s Resp. Br. at 7; Def.'s Resp. Br. at 2.

Claim 1 of the '479 Patent recites:

> An apparatus comprising:
>
> three support sides, each support side comprising a back support and an edge support, wherein a top of each back support is in physical communication with an adjacent edge support clockwise about a central axis and each back support and each edge support is in physical communication with two ends of a *solid interior*, each edge support comprises an edge support width of 2 centimeters (cm) with an edge angle of 90 degrees to an adjacent back support, a face of each edge support width oriented clockwise about the central axis, a plane of a first back support is at a first plane angle of 60 degrees to a second virtual plane between the top of a second back support counterclockwise to the first back support and an outer edge of a second edge support counterclockwise to the first back support, a plane of the second back support is at a second plane angle of 80 degrees to a third virtual plane between the top of a third back support counterclockwise to the second back support and an outer edge of a third edge support counterclockwise to the second back support, a plane of a third back support is at a third plane angle of 40 degrees to a first virtual plane between the top of the first back support counterclockwise to the third back support and an outer edge of the first edge support counterclockwise to the third back support, and wherein each back support, each edge support, and each end is a surface of the *solid interior*, the *solid interior* is a pillow covered in fabric, a first viewing

> angle of the first back support is 36 degrees, a second viewing angle of the second back support is 74 degrees, and a third viewing angle of the third back support is 49 degrees.

’479 Patent at 4:49–67, 5:1–14 (emphasis added). The claim language supports defining “solid interior” as a contiguous piece of material because the three support sides are “in physical communication” with the ends of the “solid interior.” Id. at 4:50–56. The specification provides that the solid interior “may be foam” and that the surface of the solid “may be a fabric[,]” or “a pillow [that] is covered in fabric.” Id. at 3:6–7, 3:9–14.

Defendant argues that language in the specification describing the firmness measurement of the foam interior demonstrates that a “solid interior” is a one-piece product without holes or cavities inside. Def.’s Opening Br. at 13; ’479 Patent at 3:7–9 (stating that the foam may have an “Indentation Force Deflection (IFD) [] in the range of 15-30 kilograms at 25% indentation.”). Defendant asserts that in the Notice of Allowability for the application for the ’454 Patent, the USPTO’s reasons for allowance included that “[t]he prior art does not disclose the three sided support for media device that is a solid form covered in fabric like a pillow . . . .” Def.’s Opening Br. at 14, Ex. 5 (June 24, 2016) (ECF No. 111-6) at 2. Plaintiff contends that Defendant’s construction would exclude the embodying feature of the “solid interior” being foam and claims that the brand name products identified in the specification are made of memory foam. Pl.’s Opening Br. at 7.

Plaintiff's proposed construction also states that the "solid interior" material could be foam, "rather than a shredded or particulate material (for example, pillow feathers)." Pl.'s Opening Br. at 5. Plaintiff argues that mentioning that the material can be foam reflects a non-limiting example from the specification, and that explaining that the material is not made of feathers clarifies any misunderstanding from the specification's use of the word "pillow" to describe the "solid interior." Pl.'s Resp. Br. at 10. By reading the claim language and viewing the exemplary figures in the specification, a person of ordinary skill in the art would not confuse the use of the word "pillow" to denote a solid interior that is stuffed with feathers. The use of the word "solid" in the term "solid interior" aids in this conclusion. See '479 Patent at 3:6–15.

The exemplary figures assist in understanding what the claim language means when it describes a "solid interior." Figures 1, 3, and 4 depict the apparatus as a shape that is solid and compact in form. Id. at Sheet 1, 3, 4. The word "solid" when read in relation to the exemplary figures provided in the specification is understood to have the plain and ordinary meaning of a material that is one whole unit, without holes. "Solid" when used in the term "solid interior" still retains the plain and ordinary meaning of "solid," but further is defined by the interior being located "in physical communication" with the other sides of the apparatus. See id. at 4:50–56. Accordingly, the Court concludes that the term "solid interior" shall be

construed as "an interior that is one whole contiguous piece of material (for example, foam)."

**ii. "a body"**

Plaintiff proposes construing "a body" as "a one-piece block or mass of matter distinct from other masses," whereas Defendant proposes the construction "a solid interior (incorporating Ontel's construction of 'solid interior' above)." Pl.'s Opening Br. at 8; Def.'s Opening Br. at 12. The disputed term appears in Claim 12, which recites in part: "A media support apparatus comprising: a body having a first support back, a second support back, and a third support back disposed about a central axis . . . ." '479 Patent at 5:45–47. Plaintiff argues that Defendant's proposal to construe "solid interior" and "a body" with the same meaning violates claim differentiation. Pl.'s Opening Br. at 9 (citing CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.")).

Defendant argues that Plaintiff's proposed construction is not supported by the intrinsic record. Def.'s Resp. Br. at 6. The claim language uses the disputed term in a different way than "solid interior," thus construing both terms to have the same meaning does not comport with the patent. One of ordinary skill in the art would read the term "a body," based upon how it is used in the claim language, to

have its plain and ordinary meaning of a main piece of the apparatus. Accordingly, the Court concludes that "a body" shall have its plain and ordinary meaning, which is "the main piece of the apparatus."

**iii. "a surface of an interior"**

Plaintiff proposes construing "a surface of an interior" as "an outer part of the interior," and Defendant proposes "an outer surface of a solid interior." Pl.'s Opening Br. at 10; Def.'s Opening Br. at 12. Claim 20 recites in part: "An apparatus comprising: . . . wherein each back support, each edge support, and each end is a surface of an interior." '479 Patent at 6:42, 7:9–10. Plaintiff argues that the term "surface" is used in the patent with its ordinary meaning. Pl.'s Opening Br. at 10–11. Plaintiff contends that incorporating Defendant's limitation of "without cavities or holes" into the construction of this term would again be improper. Id. Defendant contends that Figure 3 shows the surface of the interior of the media support apparatus as being "one contiguous piece without any cavities or holes." Def.'s Opening Br. at 13. The Court concludes that the term "a surface of an interior" does not require construction. A person of ordinary skill in the art would understand the disputed term to have its plain meaning of the outward-facing area of the interior, given how it is used within the claim language. Accordingly, the Court concludes that "a surface of an interior" shall have its plain and ordinary meaning of "the outward-facing area of the interior."

**B. Central Axis Term: "a central axis"**

Plaintiff proposes that "a central axis" should mean "an imaginary line extending from one of the two ends to the other end, between the three back supports or support backs (whichever is recited in the claim), about which the apparatus can be rotated." Pl.'s Opening Br. at 11. Defendant proposes that "a central axis" should mean "an imaginary line extending from the center of one of the two ends to the other end, between the three back supports (support backs)." Def.'s Opening Br. at 22. The disputed term is used in independent Claims 1, 12, and 20 of the '479 Patent. '479 Patent at 4:53, 5:47, 6:47.

Claim 1 recites in part:

> An apparatus comprising: three support sides, each support side comprising a back support and an edge support, wherein a top of each back support is in physical communication with an adjacent edge support clockwise about *a central axis* and each back support and each edge support is in physical communication with two ends of a solid interior . . . .

Id. at 4:49–56 (emphasis added).

Claim 12 recites in part: "A media support apparatus comprising: a body having a first support back, a second support back, a third support back disposed about *a central axis*[,]" "wherein the media support apparatus is configured to be rotated about the *central axis* so that the body can rest on a horizontal support in any one of the three positions . . . ." Id. at 5:45–47, 5:64–66 (emphasis added).

Claim 20 recites in part:

> An apparatus comprising:
>
> three support sides, each support side comprising a back support and an edge support, wherein a top of each back support is in physical communication with an adjacent edge support clockwise about *a central axis* and each back support and each edge support is in physical communication with two ends . . . .

Id. at 6:42–49 (emphasis added). The Court observes that the Parties' constructions are largely similar. Defendant proposes that the central axis runs "from the center of one of the two ends to the other end[.]" Def.'s Opening Br. at 22–23. Plaintiff proposes that the apparatus can be rotated about "a central axis." Pl.'s Opening Br. at 11. Defendant argues that the rotation element of Plaintiff's construction improperly imports a functional limitation from Claim 12 into other claims. Def.'s Opening Br. at 23. Plaintiff's construction does not propose that the rotation function is imperative as it states, "about which the apparatus can be rotated." Pl.'s Opening Br. at 11. Additionally, Defendant's proposal to specify that the imaginary line extends "from the center of one of the two ends to the other," aligns with the plain and ordinary meaning of "central." Def.'s Opening Br. at 22–23. Plaintiff understands "central" in "a central axis" to be a relative term that places the axis internal to the support backs and edge supports as the axis must be within these structures for rotation. See Pl.'s Opening Br. at 12.

The Court observes that "central" is not defined in the '479 Patent. Both Plaintiff and Defendant's proposed constructions describe an axis that is in the

middle of the ends of the apparatus, which aligns with the plain and ordinary meaning of "central." The word "middle" accounts for the "center" versus "central" dispute between the Parties while maintaining the meaning set forth in the specification and claim language. Accordingly, the Court concludes that "a central axis" shall mean "an imaginary line extending from the middle of one of the two ends to the other end, between the three back supports or support backs, about which the apparatus may be rotated."

**C. Edge Angle and Support Terms**

**i. "an edge angle"**

For the disputed term "an edge angle," Plaintiff proposes the construction "the angle between an edge support width and the 'back support' or 'support back' (whichever is recited in the claim) adjacent to that edge support," while Defendant asserts that the term is indefinite. Pl.'s Opening Br. at 14; Def.'s Opening Br. at 15. Alternatively, Defendant proposes the construction "the precise angle formed where an edge support and the support back adjacent to that edge support intersect." Def.'s Opening Br. at 15.

Although Defendant asserts that the term is indefinite, the Court recognizes that the Parties will defer indefiniteness arguments and will consider Defendant's proposed construction. The Parties dispute how "an edge angle" is measured. Id. at 16; Pl.'s Resp. Br. at 13. The term appears in multiple claims within the '479

Patent. See ’479 Patent. Claim 1 recites in part: “each edge support comprises an edge support width of 2 centimeters (cm) with an edge angle of 90 degrees to an adjacent back support[.]” Id. at 4:56–58. The specification states that, in one embodiment, “each edge support [] forms an edge angle [] with an adjacent back support []. The edge angle [] may be in the range of 85 to 120 degrees,” or “[t]he edge angle [] may be 90 degrees.” Id. at 3:64–67.

The Court observes that the Parties’ proposed constructions share similarities. Plaintiff argues that Defendant’s construction incorrectly defines the term as the intersection or vertex of where the back support and edge support meet. Pl.’s Resp. Br. at 13. Plaintiff asserts that an “angle” is not defined at a point where two surfaces meet, and claims that the corner formed in the claimed invention is rounded such that the vertex between the back support and edge support cannot be a point on the surface of the device. Id. at 14–15. Defendant argues that Plaintiff’s argument that the lack of a sharp corner at the intersection means that the angle should be between the edge support and back support is a misdirection. Def.’s Resp. Br. at 9.

The claim language states that an edge support forms an edge angle to an adjacent back support, indicating that an edge angle is formed where the edge support and adjacent back support meet. ’479 Patent at 4:56–58. The claim language supports the term being understood as the angle created by the edge

support and adjacent back support. Accordingly, the Court construes "an edge angle" to mean "the angle created by the edge support and adjacent back support."

**ii. "edge angle of," "edge angle is," and "edge support angle is"**

Defendant proposes that "edge angle of/is" should be construed as "the precise angle formed where an edge support and the support back adjacent to that edge support intersect." Def. Opening Br. at 15. Defendant also contends that "edge support angle is" is indefinite, but provides the same construction as proposed for "edge angle of/is" in the alternative. Id. Plaintiff argues that all three disputed terms should be construed as "the angle between the edge support width and the back support adjacent to that edge support is." Pl.'s Opening Br. at 14, 16. Plaintiff states that all uses of the word "edge angle" in Claims 1, 28, and 10 should be construed the same way and argues that there is no basis to require a "precise" angle be formed by the edge angle intersection. Id. at 16. Defendant argues that every word of the claim is given meaning in its proposed constructions. Def.'s Resp. Br. at 12–13.

In accordance with the Court's construction of an edge angle, "edge angle of" and "edge angle is" should maintain the same construction as "an edge angle" with the addition of their subsequent preposition or verb. Thus, "edge angle of" shall mean "the angle created by the edge support and adjacent back support of,"

and the terms "edge angle is" and "edge support angle is" shall mean "the angle created by the edge support and adjacent back support is."

**iii. "edge support width is" and "an edge support width of"**

Plaintiff proposes the construction "a width of the edge support that facilitates the support of the media device is" for the disputed term. Pl.'s Opening Br. at 16. Defendant proposes the construction "an edge support width that precisely is" for the disputed term. Def.'s Opening Br. at 20. The claim language recites different measurements for edge support widths. Claims 8 and 27 recite an apparatus wherein each edge support has a width ranging from "1 to 5 centimeters," and Claim 29 states the edge support width as "2 centimeters." '479 Patent at 5:33–35, 8:11–13, 8:17–18. The specification states the following:

> Each edge support [] may have an edge support width []. The edge support width [] may be in the range of 1 to 5 cm. In a certain embodiment, the edge support width [] is 2 cm.

Id. at 3:67, 4:1–3.

Plaintiff's construction suggests that the term relates to a particular portion of the edge support width and indicates that portions of the edge support width facilitate different functions. Defendant contends that the "edge support width" is a dimension defined in linear units such as millimeters or centimeters. Def.'s Resp. Br. at 14. Defendant also argues that the inclusion of "media devices" in Plaintiff's construction is overly restrictive. Id. at 15. The claim language,

supported by the specification, relates the disputed term to a unit of measurement, including the range of 1 to 5 centimeters or 2 centimeters in total. See '479 Patent at 3:67, 4:1–3, 8:11–13, 8:17–18. The Court concludes that a person of ordinary skill in the art would understand that the meaning of an "edge support width" is a unit of measurement given the context provided by both the claim language and specification. Accordingly, the term "edge support width is" or "an edge support width of" shall have its plain and ordinary meaning of "the width (unit of measurement) of the edge support."

### D. Viewing Angle and Horizontal Support Terms

#### i. "viewing angle" and "a . . . viewing angle of the . . . back support"

Plaintiff proposes construing the disputed terms as "the angle of a vector normal to a back support or support back (whichever is recited in the claim) positioned to support a media device, as defined in relation to the plane on which the media stand is resting." Pl.'s Opening Br. at 18. Defendant argues that the term is indefinite, but proposes constructions in the alternative. Def.'s Opening Br. at 20–21. Defendant proposes "an angle that is orthogonal (90 degrees) to the back support for a user" for "viewing angle" as the term appears in Claims 1 and 20, and "an angle that is orthogonal (90 degrees) to the support back for a user" for how the term appears in Claim 12. Id. Plaintiff argues that different viewing angles have different meanings, and that a definition must take into account that

the viewing angles differ due to each back support having a different "'tilt' relative to the supporting plane of the device." Pl.'s Opening Br. at 21. Defendant contends that the term "viewing angle" is defined in the patent. Def.'s Opening Br. at 21.

Claim 1 recites that "a first viewing angle of the first back support is 36 degrees, a second viewing angle of the second back support is 74 degrees, and a third viewing angle of the third back support is 49 degrees." '479 Patent at 5:10–13. Claims 12 and 20 also recite first, second, and third viewing angles. See id. at 6:8–18, 7:6–7. The claimed invention is a "multiple viewing angle media support" and the specification describes embodiments that "provide support for multiple viewing angles." Id. at [54], 2:41–42. For example, "[t]he side supports [] may be arranged to provide three different viewing angles [] for three different user positions." Id. at 2:63–65. The specification states that "[e]ach viewing angle [] is orthogonal to a support back []." Id. at 2:65–66.

The Court should not depart from the plain meaning of the claims, "[a]bsent lexicography or disavowal[.]" Alcon Rsch., Ltd. v. Watson Lab'ys, Inc., No. 16-129-LPS-SRF, 2018 WL 1805530, at *4 (D. Del. Apr. 17, 2018) (quoting Luminara Worldwide, LLC v. Liown Elecs. Co., 814 F.3d 1343, 1353 (Fed. Cir. 2016)). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the

term.'" GE Lighting Sols., LLC, 750 F.3d at 1309 (quoting Thorner, 669 F.3d at 1365). Plaintiff explains that construing the term as orthogonal to a support back, as Defendant proposes, ignores the fact that the relevant "angle" formed depends on the arrangement of the other sides. Pl.'s Resp. Br. at 18. Defendant argues that the multiple viewing angles claimed are best understood as referring to "the spatial arrangement of each viewing angle when the apparatus is in a given position, not the angles' values." Def.'s Resp. Br. at 19.

The specification describes viewing angles in relation to Figure 1, which depicts the viewing angle as a measurement between the apparatus and the user. '479 at Sheet 1. The description provided in the specification about each viewing angle being "orthogonal to a support back" is instructive on how the patent defines a "viewing angle." See id. at 2:65–67. The Court concludes that Defendant's argument that a construction of the disputed term should account for this explicit language is reasonable. Accordingly, the term "viewing angle" or "a . . . viewing angle of the . . . back support" shall mean "an angle that is orthogonal to the back support or support back for a user."

**ii. "horizontal support"**

The term "horizontal support" is disputed between the Parties. Plaintiff proposes the construction "a thing having top portions on which the apparatus can rest (for example, a tabletop or a person's lap)," and Defendant proposes the

construction "a support on which the apparatus rests." Pl.'s Opening Br. at 21; Def.'s Opening Br. at 23. The term "horizontal support" appears in Claim 12 of the '479 Patent, which recites in part:

> wherein the media support apparatus is configured to be rotated about the central axis so that the body can rest on a *horizontal support* in any one of the three positions including on a first virtual plane between a top of the second support back and an outer edge of the second edge support, on a second virtual plane between a top of the third support back and an outer edge of the third edge support, and on a third virtual plane between a top of the first support back and an outer edge of the first edge support . . . .

'479 Patent at 5:64–67, 6:1–6 (emphasis added). The claim language is permissive in stating that the body "can" rest on a horizontal support. The Court observes that the term is only used once in the '479 Patent, in Claim 12, and is not defined elsewhere in the specification. The claim language indicates that the body of the apparatus may rest on a horizontal support. Thus, an understanding of the term as a support on which the apparatus may rest aligns with the claim language. The Court concludes that the term "horizontal support" shall mean "a support on which the apparatus rests."

## E. Edge and Virtual Plane Terms

### i. "an outer edge of a . . . edge support counterclockwise to the . . . back support"

For the disputed term, Plaintiff proposes the construction "peripheral portion of the face of the edge support furthest away or nearest the back support, where

each edge support is facing the same direction around the central axis." Pl.'s Opening Br. at 23. Defendant proposes the construction "the tip of the ledge of the edge support, wherein the face of the edge support faces right and where each edge support is facing the same direction." Def.'s Opening Br. at 26. Plaintiff argues that the "outer edge" has a plain and ordinary meaning that would include the entire periphery. Pl.'s Opening Br. at 24. Plaintiff argues that Defendant's construction restricts the understanding of the disputed term "virtual plane" as well. Id. at 25.

Defendant contends that the "outer edge of [an] edge support" cannot be an abstract peripheral portion. Def.'s Opening Br. at 27. Defendant believes that the term "outer edge" is referring to the tip of the edge support, whereas Plaintiff defines "outer edge" as the "face of the edge support." Def.'s Resp. Br. at 21; Pl.'s Opening Br. at 24. The specification discusses outer edges of edge supports in relation to the back supports, and Figure 2 shows virtual planes connecting between the end of the edge support as described in Defendant's construction. See '479 Patent at Sheet 2, 3:26–48. The specification and figures support defining the term in relation to the end or tip of the edge support.

Accordingly, the Court adopts Defendant's construction and construes "an outer edge of a . . . edge support counterclockwise to the . . . back support" as "the

tip of the ledge of the edge support, wherein the face of the edge support faces right and where each edge support is facing the same direction."

**ii. "virtual plane"**

The Parties propose similar constructions for the term "virtual plane." Plaintiff proposes construing the term as "an imaginary plane configured from (i) the top of the back support of one side and (ii) the outer edge of the edge support of that side when the apparatus rests on it." Pl.'s Opening Br. at 26. Defendant proposes construing the term as "an imaginary plane configured from (i) the top of the back support of one side and (ii) the outer edge of the edge support of the adjacent side when the apparatus rests on it." Def.'s Opening Br. at 24. The Parties agree that the term "plane angle" means "the angle between the plane and a back support and a virtual plane." Both constructions adopt an understanding that a "virtual plane" is an imaginary plane. Defendant's construction specifies that the outer edge referred to is the support of the adjacent side. Id. Defendant contends that Plaintiff's proposed construction is contrary to the applicants' arguments made over prior art Barcalo and Halpin during prosecution. Id. at 25.

In the reissue application for the '454 Patent, the applicants stated that "[a]ll pending claims in the reissue application require that the media support device include virtual support resting surfaces created by both the back support and edge

support surfaces[.]" Def.'s Opening Br., Ex. 8 (Jan. 23, 2020) (ECF No. 111-9) at 13. In an appeal brief to the UPSTO, the applicants distinguished the claimed invention from Barcalo:

> The claimed viewing angles are not simply between three viewing angle sides as in Barcalo (which by having a purely triangular cross-section, would add up to 180 degrees). Instead the plane angles dictating the viewing angles are between support sides on "*virtual planes*" and adjacent display sides, a relationship that does not require the cumulative support angles of the sides to equal 180 degrees.

Def.'s Opening Br., Ex. 9 (Aug. 24, 2020) (ECF No. 111-10) at 10 (emphasis added). The appeal brief included a figure that labeled the virtual plane as "between the top of a second back support . . . and an outer edge of a second edge support." Id. at 11. Plaintiff argues that to construe the term as only one configuration would be inconsistent with the claim language that recites three different virtual planes. Pl.'s Resp. Br. at 28–29. The specification and Figure 2 indicate that the outer edge of the edge support from the adjacent side, with the top of the back support, forms the virtual plane.




FIG. 2

The Court concludes that Defendant's construction is in accordance with the specification and claim language. Accordingly, "virtual plane" shall mean "an imaginary plane configured from (i) the top of the back support of one side and (ii) the outer edge of the edge support of the adjacent side when the apparatus rests on it."

**iii. "support angle"**

Plaintiff proposes construing "support angle" as "the angle between a back support positioned to support a media device and the virtual plane on which the apparatus would rest." Pl.'s Opening Br. at 29. Defendant argues that the term is indefinite and has not proposed any construction in the alternative, recognizing that the Court permitted deferring indefiniteness issues to later in litigation. Def.'s Resp. Br. at 26–27. Defendant states that the proposed construction and argument is improper, and argues that the term should be found indefinite. Id. at 27–28.

Given that the Court has established that indefiniteness arguments may be raised later in the case, the Court will defer considering arguments related to this term at this stage.

## CONCLUSION

For the foregoing reasons, the Court construes the disputed claim terms from the Asserted Patents as follows:

1. "solid interior" shall mean "an interior that is one whole contiguous piece of material (for example, foam);"
2. "a body," shall have its plain and ordinary meaning of "the main piece of the apparatus;"
3. "a surface of an interior," shall have its plain and ordinary meaning of "the outward-facing area of the interior;"
4. "a central axis," shall mean "an imaginary line extending from the middle of one of the two ends to the other end, between the three back supports or support backs, about which the apparatus may be rotated;"
5. "an edge angle," shall mean "the angle created by the edge support and adjacent back support;"
6. "edge angle of," shall mean "the angle created by the edge support and adjacent back support of;"
7. "edge support angle is," shall mean "the angle created by the edge

support and adjacent back support is;"

8. "edge support width is," shall have its plain and ordinary meaning of "the width (unit of measurement) of the edge support;"
9. "an edge support width of," shall have its plain and ordinary meaning of "the width (unit of measurement) of the edge support;"
10. "viewing angle," shall mean "an angle that is orthogonal to the back support or support back for a user;"
11. a . . . viewing angle of the . . . back support," shall mean "an angle that is orthogonal to the back support or support back for a user;"
12. "horizontal support," shall mean "a support on which the apparatus rests;"
13. "an outer edge of a . . . edge support counterclockwise to the . . . back support," shall mean "the tip of the ledge of the edge support, wherein the face of the edge support faces right and where each edge support is facing the same direction;" and
14. "virtual plane," shall mean "an imaginary plane configured from (i) the top of the back support of one side and (ii) the outer edge of the edge support of the adjacent side when the apparatus rests on it."

IT IS SO ORDERED this 26th day of October, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.